■ BUTTONWOOD LIMITED PARTNERSHIP, Respondent, v MICHAEL H. BLAINE et al., Appellants. [830 NYS2d 371]—

Peters, J. Appeals (1) from an order of the Supreme Court (McGill, J.), entered May 25, 2005 in Clinton County, upon a de-

cision of the court in favor of plaintiff, and (2) from the judgment entered thereon.

In December 2000, defendants purchased a vacant parcel of land in a subdivision owned by plaintiff in the Town of Peru, Clinton County. The deed conveying title recited that such lot was subject to certain covenants and restrictions which were annexed thereto and also included in plaintiff's subdivision permit application. Paragraph 5 of the covenants and restrictions provided:

"A traditional style home design is intended for this subdivision, such as 'cape,' 'colonial' or 'Victorian'. The Grantor reserves the right to review, approve and disapprove of the design of the exterior appearance of all structures to be constructed on any lot, including style and materials.

"The Grantor may approve exceptions to the above mentioned styles if, in his opinion, the designs are consistent with the quality, value and appearance of homes constructed or to be constructed in the subdivision.

"Site and architectural drawings shall be submitted to the Grantor prior to construction. Grantor shall approve or disapprove the plans within 15 days of receiving them. Failure of the Grantor to respond within 15 days of receipt shall constitute automatic approval."

In accordance with these covenants, defendants submitted an initial design proposal to Donald Swain, plaintiff's general partner, which was not approved since the design did not satisfy the style requirements of paragraph 5. Defendants submitted a second design proposal (hereinafter the Weinmaster plan), which was again rejected by Swain. Defendants challenged Swain's rejection, indicating an intention to construct the home as it was last presented. Swain reiterated that the Weinmaster plan was a nonconforming style and that approval could not be granted based upon the proffered plans. After continued challenges, defendants decided to forgo prior approval. They began their construction in July 2003, moving into their residence in December 2003.

Plaintiff commenced this action before construction began, seeking a judgment declaring that defendants violated paragraph 5. It further sought injunctive relief, requiring defendants to remove the structure. Following a trial, Supreme Court found that defendants violated paragraph 5 and fashioned its own

relief. Defendants appeal from Supreme Court's order and the judgment entered thereon.*

Paragraph 5 contains an unambiguous prior approval clause which we find to be valid (*see Lynk v Leggett*, 173 AD2d 1048, 1049 [1991]). For these reasons, we need not rely on canons of construction that resolve ambiguities in covenants of this kind against the party seeking to enforce them (*see e.g. Turner v Caesar*, 291 AD2d 650, 651 [2002]). With paragraph 5 including style parameters and, therefore, the criteria governing the exercise of plaintiff's approval power, defendants' failure to obtain approval prior to constructing their home constituted a violation of this covenant (*see Lynk v Leggett, supra* at 1049).

We next determine whether plaintiff acted reasonably in rejecting defendants' plans (*see id.* at 1049-1050). The Weinmaster plan was rejected because it was a "traditional style . . . split level home" which Swain determined to be inconsistent with the style parameters of paragraph 5. When defendants attempted to compare their plan to an existing home in the subdivision, Swain explained the differences between the two designs and offered a list of elements that could bring defendants' plan into compliance. Swain's opinion was confirmed by an independent architect whom he sought for this purpose. Once it became clear that defendants were unwilling to modify their plan, Swain offered to repurchase defendants' lot for its then-current value—$6,600 over the original purchase price. Considering the testimonial and documentary evidence admitted at trial and acknowledging the contradictory evidence regarding the type of home proposed by defendants, we find plaintiff to have acted reasonably.

As to the relief granted, CPLR 3017 authorizes Supreme Court to "grant any type of relief within its jurisdiction appropriate to the proof whether or not demanded, imposing such terms as may be just" (CPLR 3017 [a]). While "not every violation of a restrictive agreement entitles an aggrieved party to equitable relief" (*Village Greens Residents Assn. v Karolewicz*, 83 AD2d 550, 550-551 [1981]), this home was legitimately objectionable and plaintiff was quick to commence this action before construction began (*compare id.* at 551). Balancing this violation (*see Meadow Run Dev. Corp. v Atlantic Ref. & Mktg. Corp.*, 155 AD2d 752, 755 [1989]) with the benefits that a uniform plan has on the subdivision and the substantial costs that defendants could have incurred if Supreme Court required them

---

* Although the judgment, entered June 29, 2005, was issued after the filing of the notice of appeal, we will deem the appeal from the judgment valid (*see* CPLR 5520 [c]).

to remove the structure, we find that the remedy fashioned by Supreme Court from some of plaintiff's prior requested changes was appropriate (*see* CPLR 3017 [a]; *Fanning v Grosfent*, 58 AD2d 366, 367-368 [1977]).

Cardona, P.J., Carpinello, Rose and Kane, JJ., concur. Ordered that the order and judgment are affirmed, with costs.