# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

164
CA 13-01123
PRESENT: SMITH, J.P., FAHEY, CARNI, VALENTINO, AND WHALEN, JJ.

---

THE PRESERVE HOMEOWNERS' ASSOCIATION, INC.,
ACTING BY AND THROUGH ITS BOARD OF DIRECTORS,
PLAINTIFF-APPELLANT,

V                                                    MEMORANDUM AND ORDER

SONNY Z. ZHAN AND HONG XU, DEFENDANTS-RESPONDENTS.

---

MICHAEL J. KAWA, SYRACUSE, FOR PLAINTIFF-APPELLANT.

SONNY Z. ZHAN, DEFENDANT-RESPONDENT PRO SE.

HONG XU, DEFENDANT-RESPONDENT PRO SE.

---

Appeal from an order of the Supreme Court, Onondaga County (Deborah H. Karalunas, J.), entered March 19, 2013. The order denied the motion of plaintiff for summary judgment, granted the cross motion of defendants for summary judgment and dismissed the complaint.

It is hereby ORDERED that the order so appealed from is reversed on the law without costs, defendants' cross motion is denied, the complaint is reinstated and plaintiff's motion is granted.

Memorandum: Plaintiff is a not-for-profit corporation comprised of property owners—including defendants—within The Preserve, a residential subdivision (subdivision) in the Town of Pompey, Onondaga County and plaintiff, inter alia, enforces the "Declaration of Covenants, Conditions and Restrictions for the Preserve" (Declaration). Plaintiff's Board of Directors (Board) directed defendants to remove two chickens from their property because the presence of the chickens violated a restrictive covenant of the Declaration, but defendants refused to do so. Plaintiff thereafter commenced this action seeking a permanent injunction ordering defendants to remove the chickens. Plaintiff moved for summary judgment with respect to the relief demanded in the complaint, and defendants cross-moved for summary judgment dismissing the complaint. Supreme Court denied the motion and granted the cross motion. We reverse.

"It is well settled that, '[s]o long as the [B]oard [of directors of a homeowners' association] acts for the purposes of the [homeowners' association], within the scope of its authority and in good faith, courts will not substitute their judgment for [that of] the [B]oard[ ]' " (*Spaulding Lake Club, Inc. v Haibo Jiang*, 78 AD3d

1668, 1669, quoting *Matter of Levandusky v One Fifth Ave. Apt. Corp.*, 75 NY2d 530, 538).  The Declaration provides that plaintiff's Board "shall have the absolute power to prohibit a pet from being kept on the Properties, including inside residences constructed thereon." Here, plaintiff established that its Board was acting for the purposes of the homeowners' association and within the scope of its authority when it directed defendants to remove the chickens from the property. In addition, there is no evidence that defendants were " 'deliberately single[d] out . . . for harmful treatment' " inasmuch as no other residents of the subdivision had chickens or were in violation of the applicable restrictive covenant (*Spaulding Lake Club, Inc.*, 78 AD3d at 1669), and defendants otherwise " 'failed to present evidence of bad faith . . . or other misconduct' " (*id.*).

All concur except SMITH, J.P., and FAHEY, J., who dissent and vote to affirm in the following Memorandum:  This case turns on the issue whether the Silkie chickens raised by defendants' daughters can be considered "normal household pets."  If they are "normal household pets," then plaintiff has no basis to seek their removal from defendants' property.  We conclude that the "Declaration of Covenants, Conditions and Restrictions for the Preserve" (Declaration) does not unambiguously empower plaintiff to order the removal of the chickens from defendants' property.  We would thus affirm the order granting defendants' cross motion for summary judgment dismissing the complaint, and we therefore respectfully dissent.

" ' " [T]he law has long favored . . . free and unencumbered use of real property, and covenants restricting use are strictly construed against those seeking to enforce them" ' (*Ledda v Chambers*, 284 AD2d 690, 691 [2001], quoting *Witter v Taggart*, 78 NY2d 234, 237 [1991]; *see also Greek Peak v Grodner*, 155 AD2d 827 [1989], *affd* 75 NY2d 981 [1990]).  Therefore, a party seeking to enforce a restrictive covenant 'must prove, by clear and convincing evidence, the scope, as well as the existence, of the restriction' (*Greek Peak*, 75 NY2d at 982).  'The presence of an ambiguity in a restrictive covenant . . . requires the court to construe the covenant to limit, rather than extend, its restriction' (*Turner v Caesar*, 291 AD2d 650, 651 [2002]).  Moreover, where the language used in a restrictive covenant is equally susceptible of two interpretations, the less restrictive interpretation must be adopted (*see Bear Mtn. Books v Woodbury Common Partners*, 232 AD2d 595 [1996], *lv denied* 90 NY2d 808 [1997]; *Sunrise Plaza Assoc. v International Summit Equities Corp.*, 152 AD2d 561 [1989], *lv denied* 75 NY2d 703 [1990])" (*Ludwig v Chautauqua Shores Improvement Assn.*, 5 AD3d 1119, 1120, *lv denied* 3 NY3d 601; *see Erie Otto Corp. v Inland Southeast Thompson Monticello, LLC*, 91 AD3d 1155, 1156, *lv denied* 19 NY3d 802).

Here, the relevant restrictive covenant states in its entirety that "[n]o animals, livestock, or poultry of any kind shall be raised, bred, or kept on the Properties, except that no more than a total of two (2) dogs, cats, or other normal household pets may be kept in residences subject to rules and regulations adopted by [plaintiff] through its Board of Directors, provided that such pets are not kept, bred, or maintained for any commercial purpose and provided that pet

waste shall be removed from the Lot and/or the Common Area by the owner of such pet.  The Board shall have the absolute power to prohibit a pet from being kept on the Properties, including inside residences constructed thereon."

There is no dispute that, subject to the limitations of the restrictive covenant, up to two household pets may be kept on each property encumbered by the restrictive covenant.  Affording the least restrictive interpretation of the phrase "normal household pets," we conclude that there is no evidence in the record that chickens are not "normal household pets" within the meaning of the restrictive covenant.

The issue is whether that part of the restrictive covenant declaring that plaintiff's Board of Directors (hereafter, Board) has "absolute power to prohibit a pet from being kept on the Properties" applies to the "two . . . dogs, cats or other normal household pets" permitted by the covenant, or whether such power applies only to pets outside the two "dog[], cat[] or other normal household pet[]" limit. In our view, the restrictive covenant is unclear as to the scope of power of the Board, i.e., the restrictive covenant does not specify whether the Board is empowered to prohibit only a pet or pets beyond the two-pet limit, or whether the Board can prohibit the keeping of *any* pet on defendants' property.  Indeed, under plaintiff's interpretation of the restrictive covenant, the Board's power to determine the pets not permitted on defendants' property would be so broad as to allow the Board to regulate and to discriminate by breed, mix, color or gender, and we decline to read the restrictive covenant to permit such selectivity and disparate treatment.  Under plaintiff's interpretation, any animal of which the Board disapproves can be prohibited regardless whether it is a "normal household pet." Apparently, without offering any rationale, the Board is free to determine "absolute[ly]" what constitutes a "normal household pet." In our view, the restrictive covenant is ambiguous under any fair reading and, thus, the ambiguity must be resolved against plaintiff, i.e., the party seeking to enforce it (*see Ludwig*, 5 AD3d at 1120). We would therefore affirm the order granting defendants' cross motion for summary judgment dismissing the complaint.

Entered:  May 2, 2014                    Frances E. Cafarell
                                         Clerk of the Court